(No. 39487.—

The People of the State of Illinois, Appellee, *vs.* Paul Romaine, Appellant.

*Opinion filed November 30, 1967.*

Ward, J., took no part.

Charles Liebman, of Chicago, (Michael H. Brodkin, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and John William Crilly, Assistant State's Attorneys, of counsel,) for the People.

326

ELMER GERTZ, of Chicago, (ARTHUR W. BAUM and WAYNE B. GIAMPIETRO, of counsel,) for *amicus curiae.*

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury found the defendant, Paul Romaine, guilty of the offense of obscenity (Ill. Rev. Stat. 1963, chap. 38, par. 11—20), because he sold a copy of the book "Memoirs of a Woman of Pleasure", better known as "Fannie Hill". He was fined $1,000 and placed on probation for two years. He appeals directly to this court primarily on the ground that his conviction violated the State and Federal constitutions because the book is not obscene; he also urges that many errors, alleged to have occurred during the trial, also require reversal. Under the decisions of the Supreme Court of the United States, we find it necessary to consider only two issues: first, whether there was an element of pandering in the sale of the book, and second, whether the book is obscene.

John Skinkus, a Chicago police officer, testified that he entered the defendant's book store and "asked Mr. Romaine if he had a book entitled Memoirs of a Woman of Pleasure," and Romaine replied that he did. He then asked Romaine "if that was the Fanny Hill book," and Romaine replied "that it was taken from the text of a 17th century novel, [of] which there are several on display in several museums of the different countries." Romaine picked up the book and gave it to him. He gave Romaine $6.00 and some cents for the book and left the store. The book had been lying on a table marked "New Books". It is not illustrated and there are no pictures on its dust jacket, which referred to the book as "an outstanding literary curiosity."

In this record there is no evidence of exploitation of prurient interest of the sort which in *Ginzburg* v. *United States,* 383 U.S. 463, 470, 16 L. Ed. 2d 31, 38, was considered "relevant in determining the ultimate question of

obscenity," and "equally relevant to determining whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality—whether it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes." Since there is no such evidence, the character of the book must be determined from its contents, unaffected by the conditions under which it was sold.

Other courts have been called upon to make that determination, and their conclusions have differed. In 1964 the New York Court of Appeals by a four to three vote held this book not obscene. (*Larkin* v. *G. P. Putnam's Sons,* 14 N.Y.2d 399, 200 N.E.2d 760.) In 1965 the Supreme Judicial Court of Massachusetts by a four to three vote held it obscene. (*Attorney General* v. *A Book,* (1965) 349 Mass. 69, 206 N.E.2d 403.) Thereafter the Supreme Court of the United States reviewed the Massachusetts decision. *A Book* v. *Attorney General,* (1966) 383 U.S. 413, 16 L. Ed. 2d 1.

Three justices joined in the opinion of the court, which stated: "We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 U.S., at 489, 1 L. Ed. 2d at 1509. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 16 L. Ed. 2d at 5, 6.

The decision of the Supreme Judicial Court of Massachusetts was reversed because that court expressed the view that "* * * the fact that the testimony may indi-

cate this book has some minimal literary value does not mean it is of any social importance. We do not interpret the 'social importance' test as requiring that a book which appeals to prurient interest and is patently offensive must be unqualifiedly worthless before it can be deemed obscene." (206 N.E.2d at 406.) The opinion of the Supreme Court of the United States repudiated this view, stating: "A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor cancelled by its prurient appeal or patent offensiveness." 383 U.S. at 419, 16 L. Ed. 2d at 6.

In the case before us as in the Massachusetts case, there was testimony of professors of English, literary critics and others to the effect that the book has literary and historical importance. The People offered no contradictory testimony, nor do they assert that the book is utterly devoid of social value. They say: "It is the People's theory that a thing is obscene if considered as a whole, its predominant appeal is to prurient interest, and if it goes substantially beyond customary limits of candor in description or representation of such matters, and once this has been decided such a thing *can have* no redeeming social importance such as to place it within the protection of the First Amendment."

This theory has been rejected by the Supreme Court of the United States with respect to the very book that is before us in this case. The views of the three justices who joined in the opinion of the court in the Massachusetts case have been quoted. In addition, "Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their 'obscenity.' A third has held to the opinion that a

State's power in this area is narrowly limited to a distinct and clearly identifiable class of material." (*Redrup* v. *New York,* (1967) 386 U.S. 767, 770, 18 L. Ed. 2d 515, 518.) Whichever of these constitutional standards is brought to bear upon the record in this case, the judgment of conviction can not stand.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.